Whitman Agricultural Co. *v.* Hornbrook.

---

WHITMAN AGRICULTURAL COMPANY *v.* HORNBROOK.

[No. 2,938.   Filed Nov. 29, 1899.   Rehearing denied March 6, 1900.]

CONTRACTS —*Approval.—Principal and Agent.—* Plaintiff brought suit for damages for an alleged breach of a written contract, and for work and labor performed thereunder. It appeared that defendant's agent entered into an agreement with plaintiff whereby plaintiff was to purchase of defendant certain machinery, and was to have the exclusive right to sell the same in a certain vicinity, the agreement to have no validity until it was approved by written notice of acceptance from defendant. Defendant had no notice of the agreement until plaintiff ordered a machine, almost a year after the agreement was entered into, and upon receiving the information it repudiated the contract and refused to ship the machine. *Held*, that no liability attached under the contract.

From the Vanderburgh Superior Court. *Reversed*.

*Peter Maier* and *T. J. Moll*, for appellant.

*S. R. Hornbrook* and *W. M. Wheeler*, for appellee.

WILEY, C. J.—Appellee sued appellant to recover damages for an alleged breach of a written contract, and also upon a common count for work and labor performed. While the complaint is in three paragraphs, it is not necessary to refer to them, except to state in a general way the

contract relied upon and the breach alleged.    The alleged contract was signed by appellee, in person, and for appellant by one William Peek, agent.    Peek was the traveling salesman for appellant, and negotiated an agreement with appellee whereby the latter was to purchase of appellant certain machinery, and was to have the exclusive right to sell the same in the city of Evansville and vicinity.    The agreement provided that appellee could order such presses, for which he was to give his notes at four months, and purchase them outright.    The agreement was executed in duplicate, and provided that before it could have any validity, it must be approved by written notice of acceptance from appellant.

The first and second paragraphs of complaint aver that appellee, in good faith, entered upon the performance of the contract; that he expended money in advertising, etc., and performed all the conditions of the contract on his part up to August, 1896, and that after said time he was ready and willing to advertise said machines, canvass his territory to sell the machinery, etc., but that appellant did not comply with the conditions of the contract on its part, but refused and failed to pay appellee his commission on sales made by him under the contract, and failed and refused to accept from him orders obtained for said machines.    It is further alleged that in August, 1896, appellant wrongfully revoked appellee's authority to act as its agent, and refused to recognize him as such; that prior to August, appellee had sold one press, under the contract, on which his commission would have been $91.67, had taken an order on which his commission would have been $98, and that if his authority had not been revoked he would have made other sales, by which he would have earned commissions amounting to $350.

Appellant answered in three paragraphs.    The first paragraph goes to the whole complaint, and is a general denial. The second purports to go only to the first and second para-

graphs of complaint, and avers that, by the express terms of the pretended contract sued upon, the same was not valid until approved by written notice of acceptance, and that appellant had not approved it, either in writing or otherwise, and that it had no knowledge of such pretended contract. The third paragraph of answer also goes to the first and second paragraphs of complaint, and avers that the pretended contract sued upon contained a provision that when appellee signed it he was solvent and responsible; that appellant entered into such agreement upon the faith of such representations; that appellee was not solvent and responsible, but that he was insolvent and irresponsible, and that appellant gave notice to appellee as soon as it ascertained said fact that it would not comply with such pretended contract.

The case was put at issue by a reply in two paragraphs, and a trial by the court resulted in a finding and judgment for appellee. Appellant moved for a new trial on the ground, (1) that the assessment of the amount of the recovery was erroneous, being too large; (2) that the decision was not sustained by sufficient evidence, and (3) that the decision was contrary to law. This motion was overruled, and such ruling is the only error assigned.

We will first consider the question presented by the record with reference to the first and second paragraphs of complaint, for they each count upon an alleged contract. By a reference to the contract, which is made an exhibit to the first and second paragraphs of complaint, we find this provision: "This agreement not valid until approved by written notice of acceptance from Whitman Agricultural Co. St. Louis, Mo." The contract purports to have been signed November 18, 1895, and the signatures thereto are as follows: "Whitman Agricultural Co. By Will Peek, Traveling Salesman, Contracting agent." (Party of the first part.) "Hornbrook & Co." (Party of the second part.) This contract is upon a printed blank, and the name of ap-

pellant attached thereto is in print. The evidence is uncontradicted upon six material questions relating to and affecting the alleged contract: (1) Peek never sent or gave to appellant the duplicate kept by him; (2) if he did send it by mail, it never reached it; (3) Peek did not know what he did with it, or what became of it; (4) appellant never knew that such a contract had been made until about the 3rd of August, 1896; (5) that, upon receiving such information, it repudiated the contract, and refused to approve, and never did approve it; and (6) long before August 10, 1896, it had entered into another contract with other parties covering the same territory. The contract sued on also contains the following provisions: "That the party of the first part  * * *  covenants and agrees to manufacture and sell unto the said party of the second part, the following number and classes of Whitman's hay, straw, and wool presses, and at and for the following prices." Then follows a description of the presses, with the prices. "Also the said party of the second part [appellee], in consideration aforesaid, covenants and agrees to buy of the said party of the first part [appellant] the number and classes of machines, and at and for the prices above specified.  * * *  The said party of the second part covenants and agrees to pay for said machines by executing and delivering to the said party of the first part  * * *  promissory note or notes for the purchase price of said machines, in manner following, to wit, term 4 Mo."

The contract, under all of its provisions, must be construed as a contract to purchase outright by appellee of appellant the machines described, and not a contract constituting appellee appellant's agent to sell. The machines so purchased were to be paid for directly by appellee, and payment did not depend on appellee's subsequent sales. Appellant did not assume any liability under the contract, except to manufacture the machines, deliver them when ordered, and take appellee's note or notes, in payment, run-

ning four months. It is an undisputed fact that appellee did
not, under the contract, order any of the machines.    Ap-
pellant did not ship any machines to appellee.    Under the
contract, appellee was to purchase the machines at a fixed
price, and a definite discount for cash.    Appellant did not
stipulate in the contract what appellee should sell the ma-
chines for.    In August, 1896, appellee obtained from one
Phillip Schnur, a farmer, a written order for one of appel-
lant's machines, and sent it to its home office.    That order
was as follows:    "Please ship to me one Whitman's im-
proved universal full circle hay-press  *  *  *  to be
shipped to Phillip Schnur, on or before September 1, 1896,
or as soon as possible thereafter; care of Hornbrook & Co.,
Evansville, Ind., for which I agree to pay $325,—cash on
delivery $50, and execute notes as follows:    One note for
$50 due January 1, 1897, one note for $100 due September
1, 1897; one note for $50 due January 1, 1898; one note
for $75, due September 1, 1898, with six per cent. interest.
Order taken and forwarded by Hornbrook & Co., subject to
approval of Whitman Agricultural Co.  *  *  *  [Signed]
Phillip Schnur.  Hornbrook & Co., Agents."  This order was
returned to appellee by appellant by letter, in which it was
said:    "Yours of the 3rd received.    We made arrangements
with Herman Bros. for selling our presses at Evansville, and
cannot accept your order for press, therefore return same
to you."    This order was sent to appellant nine months
after the pretended execution of the contract sued on, and
was the first intimation appellant had that appellee was pre-
tending to act as its agent.    As we have seen, the contract
was not one of agency, and, even if it was, the order sent
did not come within any of its provisions.    The order also
contained the provision that it was subject to the approval
of appellant.    Appellant declined to approve it,—in fact
refused to do so, and it can not be pretended with any show
of reason that such order created any liability against appel-
lant to take and forward orders of that character.    Still

there could be no liability on account thereof, if appellant refused to approve the orders, for the plain reason that all orders of a like character were subject to its approval. It is shown that this order was disapproved for two reasons: (1) Because appellant had contracted with another firm to represent it at Evansville, and (2) because it would not accept the terms expressed in the order.

Appellee seeks to establish his agreement with appellant for the year 1896, by showing that during the two previous years he had a like contract with it containing the provisions that they were subject to approval by written notice, and that appellant had not approved the contracts, and acted upon them. There are two reasons why appellee can not thus establish his pretended contract of 1896: (1) The contracts of 1894-5 were essentially different from the contract of 1896 in some particulars, which need not be noticed, and (2) the former contracts were received and acted upon by appellant. Here appellant never received from its agent the contract relied upon; did not know that its agent had entered into it, and when appellee first insisted that he had such a contract, appellant repudiated it, and refused to be bound by it. It is an uncontradicted fact that after the signing of the pretended contract sued upon, appellant entered into a contract with Herman Bros. for the sale to them of certain of its machines, which contract was in all essential respects like the contract sued on. It is also uncontradicted that Herman Bros. bought of appellant, under its contract, at least four machines, for which they gave their notes in payment, such notes running four months. These machines were sold to different parties upon such terms as the purchasers and the Herman Bros. could agree, and appellant had nothing to do with such sales. These notes were paid by Herman Bros. The trial court evidently went upon the theory that the pretended contract sued upon was binding and valid as between appellant and appellee, and that appellee was entitled to recover whatever

profits accrued to Herman Bros. by reason of the sales made by them. We assume that this was the theory of the trial court, for the conclusions reached cannot rest upon any other theory. There is no evidence in the record to support a judgment for the amount found to be due upon the third paragraph of the complaint, which is a common count for work and labor done and expenses incurred.

Counsel have ably discussed the doctrines and principles applicable to the right to recover speculative or uncertain damages arising out of a breach of contract, but the view we have taken of the contract relied upon makes it unnecessary for us to notice the question further. Having come to the conclusion that there was no valid or binding contract between the parties, it follows as a legal and logical sequence that there could be no breach of it on the part of the appellant upon which an action for damages in favor of appellee can rest. It appearing from the record that the judgment rests upon the first or second paragraph, and the cause of action therein stated being an alleged breach of the contract sued upon, it follows that the finding and judgment of the trial court are not supported by the evidence. It is not a question of the weight of the evidence, but an entire failure of evidence. Appellee contends that the evidence is not in the record, but in this contention we can not agree. The record shows that the longhand transcript of the evidence was incorporated in a bill of exceptions, the bill duly approved and signed by the judge, and when so signed was filed in open court. These facts all appear by order-book entries.

The judgment is reversed, and the court below is directed to sustain appellant's motion for a new trial.