## Welsh v. Kelly-Springfield Tire Company.
[No. 26,938.  Filed January 18, 1938.]

*J. Edwin Smith,* for appellant.

*Wildermuth, Force & Barr,* and (*Gleason, McLanahan, Merritt & Ingraham,* of counsel), for appellee.

Roll, J.—Appellant was engaged in the retail business, selling casings, tires, tubes, and automobile accessories in the city of Gary, Indiana. In 1931 he and appellee entered into a written agreement whereby appellant agreed to purchase all his requirements of casings, tires, tubes, and other automobile accessories from appellee upon the terms and conditions set out in the contract. Later a supplemental contract was entered into, whereby the original contract was in some respects changed and modified, and also provided that appellee would extend to appellant "continuous credit" in the sum of $1,500.00. This "continuous credit" agreement also provided that the, "Dealer agrees to pay to Company forwith upon the termination or abrogation of this agreement all sums then owing Company including said sum owing as A Continuous Credit either in cash or by return of saleable Kelly merchandise acceptable to the Company." Appellee and appellant operated under this agreement until 1934, when a new agreement was executed as of January 2, 1934. This new contract was also modified by a subsequent agreement, called "Continuous Credit" agreement, by the terms of which appellee extended appellant a "Continuous Credit" of $2,000.00. Appellant purchased all his requirements as provided in the contract, from appellee, until May 24, 1934, on which date he notified appellee that he had cancelled his contract. No question is presented with reference to the cancellation. It appears that appellant paid appellee for all merchandise purchased under the new contract except the $2,000.00 "continuous credit." Appellant offered to return merchandise in satisfaction of this credit, but appellee refused to accept the return of merchandise, and demanded payment in cash. The new contract dated January 2, 1934, did not contain a provision for the return of merchandise upon the abrogation or cancellation of the contract, as was contained in

the supplemental "continuous credit" agreement attached to the original contract executed in 1931. Appellant refused to pay appellee the $2,000.00 due and this action followed to recover the same. Appellant filed answer in general denial and a cross-complaint. The following excerpt from the cross-complaint makes clear appellant's position.

"Defendant further says that prior to the execution of the agreements mentioned herein this plaintiff and defendant were doing business under an agreement substantially the same as the agreement set forth herein and which agreement was dated April 21st, 1932, modified by a supplementary contract dated October 15th, 1932, this last mentioned agreement provided among other things, as follows:

'Dealer agrees to pay to Company forthwith upon the termination or abrogation of this Agreement, all sums then owing Company, including said sum owing as a Continuous Credit, either in cash, or by return of saleable Kelly merchandise acceptable to the Company;'

"Said contract further providing among other things, as follows:

'and should dealer for any reason fail to comply with said conditions, the total amount then owing Company, including the sum which otherwise might remain owing as said continuous Credit, automatically shall become immediately due and payable, in cash, or by return of saleable Kelly merchandise acceptable to the Company.' . . .

"Defendant further says that at the time of the execution of the contract as shown by plaintiff's Exhibit 'A' and 'B' and defendant's Exhibit 'C,' this defendant asked said plaintiff whether said provision relative to the return of merchandise had been incorporated therein and was assured by said plaintiff that said agreement did provide for the return of merchandise held under Continuous Credit Agreement and this defendant relying on the representation of said plaintiff and accepted

said contract without further examination to determine that such was the fact; that through inadvertence or through the deliberate misrepresentation of the plaintiff said agreement as shown by plaintiff's Exhibit 'B' did not contain provisions relative to the return of merchandise as shown herein provided by prior agreements; that said written contract as set forth in plaintiff's Exhibit 'A' and 'B' and defendant's Exhibit 'C' should be modified and amended to include provisions relative to the return of merchandise as contained in their agreements dated September 21st, 1932, and October 15th, 1932, as hereinabove set forth.

"Defendant further says that on May 23rd, 1934, this defendant advised the plaintiff herein of his desire to cancel the contract existing between the parties and asking them that he be advised where to ship said merchandise covered by the Continuous Credit Agreement as shown by plaintiff's Exhibit 'B' in accordance with their agreement and was later advised by the plaintiff that they would refuse to accept said shipment of merchandise; that by reason of said refusal by this plaintiff to accept said merchandise this defendant has been required to store and keep said merchandise for and on behalf of the plaintiff herein to his damage in the sum of $500.00; that this defendant stands willing to turn over to the plaintiff all merchandise of the plaintiff he has stored which is covered by the Continuous Credit Agreement mentioned in plaintiff's Exhibit 'A'."

The cause was submitted to the court for hearing and judgment without the intervention of a jury. The court found in favor of appellee on its complaint in the sum of $2,000.00, and against defendant on his cross-complaint. Judgment was entered accordingly. Appellant's motion for a new trial was overruled, and error is predicated upon the overruling of the motion for a new trial. Other errors are assigned which will be noted later.

In appellant's motion for a new trial he states as grounds therefor, the exclusion of certain offered evi-

dence. We need not set out all the evidence excluded, as each of the courts rulings were predicated upon the same rule of law. Appellant offered to prove an oral conversation between himself and a representative of appellee company to the effect that before he (appellant) signed the new contract, dated January 2, 1934, he asked the representative of the appellee company if the new contract contained the provision as to the return of merchandise, the same as was in the old contract; and that the representative of appellee company told him that it did. The question put to appellant and the offer to prove are as follows:

Q. "What was said by you and what was said by anyone representing the Company at that time immediately before the execution of the contract as shown by Plaintiff's Exhibit 1 and 2?"

Offer to Prove. "I said I insist upon having the right to return merchandise under said Agreement and that the same provisions that were contained in our former agreement be put in this new agreement. Has that been done?" To which the representative of the Company, Mr. Youngkranz replied: "You are protected in this contract with the same provisions as were contained in the old and under it you will have the right to return merchandise called for by said continuous credit agreement."

Appellant offered to prove the provision with reference to the return of the merchandise contained in the supplemental Continuous Credit agreement attached to the original contract hereinabove set out but this offer was rejected. The above offered evidence was rejected on the theory that appellant was bound by the terms of the contract as signed, and the offered evidence tended to vary and modify the terms of a written contract.

We think the offered evidence was rightly refused. The rule which we consider as controlling in this case is aptly stated by Pomeroy, Eq. Jurisp. (2d ed.), §892, as follows:

"As a generalization from the authorities, the various conditions of fact and circumstance with respect to the question how far a party is justified in relying upon the representation made to him may be reduced to the four following cases, in the first three of which the party is not, while in the fourth he is, justified in relying upon the statements which are offered as inducements for him to enter upon certain conduct: (1) When, before entering into the contract or other transaction, he actually resorts to the proper means of ascertaining the truth and verifying the statement. (2) When, having the opportunity to make such examination, he is charged with the knowledge which he necessarily would have obtained if he had prosecuted it with diligence. (3) When the representation is concerning generalities equally within the knowledge or the means of acquiring knowledge possessed by both parties. (4) But when the representation is concerning facts of which the party making it has, or is supposed to have knowledge, and the other party has no such advantage, and the circumstances are not those described in the first or second case, then it will be presumed that he relied upon this statement; he is justified in doing so."

In *Wood* v. *Wack* (1903), 31 Ind. App. 252, 256, 67 N. E. 562, the court said:

"It is a fundamental principle that a man is bound to use ordinary care and diligence to guard against fraud and imposition, and that, if he fails to do so, he can not obtain relief from the courts. *Codfelter* v. *Hulett,* 72 Ind. 137, 144, and cases cited. It appears from the averments of the answer that the relation of appellant and appellee were not such as to justify the existence of trust and confidence. Appellee was an intelligent man— a man of affairs. It is not alleged that the agreement in question was not read to him, nor that he did not have an opportunity of reading it, before affixing his signature thereto. He had had no business, and no previous acquaintance, with appellant. The means of information as to the nature and contents of the agreement were within his im-

mediate reach, and he neglected to avail himself of them, when it was clearly his duty to do so. To hold that, under the circumstances, he was excused from so doing, would be dangerous precedent."

In *American Insurance Company* v. *McWhorter* (1881), 78 Ind. 136, 138, the court quotes with approval from *Seeright* v. *Fletcher* (1843), 6 Blackf. 380, as follows:

"It does not appear that the defendant was deceived by the representations made to him, or if he was, it is manifest that it was the consequence of his own folly. If the defendant were an illiterate man, and the bond had been misread to him, he not being able to detect the imposition, the case would have been different. But it appears that he signed the bond without reading it himself, or hearing it read, and with all the means of knowing the truth in his power, reposed a blind confidence in representations not calculated to deceive a man of ordinary prudence and circumspection. In such a case the law affords no relief."

In *Ray* v. *Baker et al.* (1905), 165 Ind. 74, 74 N. E. 619, we have a different statement of fact. In this case the execution of the note was secured by fraud. Baker was very illiterate, unable to speak or write the English language, unacquainted with the transactions of business matters, and was wholly ignorant of the meaning of legal terms and proceedings, while on the other hand Junkens (who secured the execution of the note) was one who had had much experience in business, and was a man of pronounced business ability, and had transacted much business with Baker. The facts showed that Baker was justified under all the circumstances in placing confidence in Junkens. In other words, there existed a confidential relationship which distinguishes it from the present case. Here there was no contention that any relationship of trust or confidence existed between the parties. It appears that appellant was a business man of experience. No showing is attempted to be made that any trick or artifice was

practiced to prevent appellant from reading the contract for himself. He had the contract in his possession and the fact that he did not read it and discover its contents for himself, was clearly the result of his own carelessness and blind folly. Under such circumstances he cannot obtain relief from the hands of the court. We think the law on this point is so well settled that further citations are not necessary. We therefore hold that the court did not err in excluding the offered evidence.

It appears that before trial appellee had submitted nineteen written interrogatories to appellant which were answered. At the trial appellee offered the first seven questions and answers in evidence and they were admitted. Appellant afterwards offered the remaining questions and answers in evidence and interrogatories, and Nos. 8, 10, 12, 13, 14, 18, and 19 were excluded. After appellant had filed his motion for a new trial appellee filed consent that the court might consider the excluded questions and answers in passing upon appellant's motion for a new trial. The court in passing upon appellant's motion for a new trial considered the excluded interrogatories and the answers thereto, the same as though they had been admitted as evidence. Appellant says this is error.

The questions and answers excluded are as follows:

"8. Q. Did you cancel your continuous credit agreement with the plaintiff, and if so, when?
A. Yes, about May, 1933, I believe.
10. Q. Was this indebtedness owing by you to the plaintiff at the time you gave notice of the cancellation of such contract in the sum of $2,000.00?
A. I did not owe them anything.
12. Q. Have you ever paid any money to the plaintiff herein on account of the debt you owed to the plaintiff at the time you cancelled such contracts?
A. I owed them nothing at time I cancelled contract.
13. Q. Were there any other written contracts

existing between you and the plaintiff in this cause on May 24, 1934, other than the sales agreement of January 2, 1934, modification agreement attached thereto and dated March 5, 1934, and February 12, 1934, and the continuous credit agreement dated January 2, 1934, copies of all of which are set out as Exhibits to plaintiff's complaint in this cause and marked 'Exhibits "A" and "B".'

A. Yes, there were prior agreements.

14. Q. If your answer that there were other contracts existing between you and the plaintiff on May 24, 1934, set out the terms and conditions of such additional contracts.

A. They agreed to let me return merchandise and the agreement dated Jan. 2, 1934, should have been so worded.

18. Q. Did you ever store any tires for the credit of the plaintiff herein as your attorney indicated you would in his letter of June 12, 1934, to the plaintiff herein and if so, where were said tires stored and where are such tires now?

A. Yes, Indiana Auto Supply Company, West 5th Avenue, Gary, Indiana, and 528 Carolina St., Gary, Indiana.

19. Q. If you answer that such tires were stored as asked in the previous question, then state the quantity and sizes of the tires so stored.

A. Inventory attached hereto."

While the procedure followed is irregular to say the least, yet it clearly appears that appellant was in no way harmed by the procedure followed. The questions and answers had they been admitted could in no way change the result of the trial in view of the position taken by the court as to the law governing the controverted questions presented. We do not think there was reversible error in the action taken by the court.

The contract sued upon contains the following provision:

"In case of a decline in Company's established dealers' prices during the term of this continuous credit, the price protection to the Dealer, as pro-

vided in paragraph 2 hereof, shall extend to the Dealer's entire inventory of Kelly Springfield stock on hand and unsold at the date of such price decline, it being understood that Company's credit memorandum rebating the Dealer for the difference in price shall be applied toward the reduction of this Continuous Credit.

"In the case of an increase in Company's established dealers' prices during the term of this Continuous Credit, the Company shall reinvoice to the Dealer's current stock on hand representing said Continuous Credit, to the Extent of $2,000.00 in value at Dealer's former buying price, it being understood that this Continuous Credit shall thereupon be increased by the amount of Company's invoice billing such difference in value."

Appellant contends that by the above provision of the contract the appellee had the right to either lower or raise the price of the merchandise after it had been delivered to appellant, and for that reason the merchandise was not sold to appellant but was merely a consignment. It will be noted that nowhere in the contract was there any reservation of title to the property reserved in appellee. Appellant was free to sell or dispose of the goods received from appellee, at any price he chose, or in any manner he desired without regard to appellee. Appellee had no control over appellant's selling price or manner of sale, and under the contract appellant had obligated himself to pay for the merchandise received from appellee, regardless of whether he had resold it or not. These are "earmarks" of a sales agreement and are inconsistent with the theory of a consignment agreement. *John Deer Plow Co.* v. *Mowry* (1915), 222 Fed. 1; *Peoria Mfg. Co.* v. *Lyons* (1894), 153 Ill. 427, 38 N. E. 661; *Whitman Agricultural Co.* v. *Hornbrook* (1899), 24 Ind. App. 255, 55 N. E. 502.

We do not think the above quoted provision in the contract, whereby appellee would have the right to

protect itself against a rise in prices or to give appellant the benefit of a decline in price would have the effect of relieving appellant from paying for merchandise shipped by appellee and accepted by appellant under the contract.

We find no reversible error. Judgment affirmed.