**EASTERN SERVICE MANAGEMENT COMPANY, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. AC–1577.**

United States District Court
E. D. South Carolina,
Columbia Division.

July 8, 1965.

A. McConnell Faucette, Jr., of Faucette & Faucette, and David W. Robinson, II, of Robinson, McFadden & Moore, Columbia, S. C., for plaintiff.

Terrell Glenn, U. S. Atty., Columbia, S. C., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

HEMPHILL, District Judge.

Before the Court are motions for Summary Judgment by both parties and a motion by the United States to dismiss for lack of jurisdiction. The parties have agreed that, for purposes of these motions, the Court may consider the testimony and record made in a prior hearing in this controversy before the Board of Contract Appeals of the General Services Administration of the United States. The relevant facts reflected there and in the affidavit attached to the plaintiff's motion are undisputed.

On April 19, 1963 the government issued its Invitation, Bid and Award, inviting bids for cleaning the Atlanta Regional Service Center at Chamblee, Georgia for a one-year period beginning October 15, 1963. The Invitation required the contractor to perform all cleaning services and described the building as follows:

"Total space to be serviced consists of approximately 111,174 sq. ft. of occupied space, 18,126 sq. ft. of unoccupied space, 42,700 sq. ft. of warehouse space, and 6,000 sq. ft. of

cafeteria dining space. The building is occupied by the Internal Revenue Service."

On August 29, 1963, an addendum to the Invitation was issued, changing this description to read:

"Total space to be serviced consists of approximately 129,300 sq. ft. of office space, 42,700 sq. ft. of warehouse space and 6,000 sq. ft. of cafeteria dining space. This building is occupied by the Internal Revenue Service."

The Invitation and Addendum were in the form customarily used by the government and contained the usual information.

Upon receipt of the Invitation, plaintiff's officers visited the premises to determine the general nature and layout of the building. Plaintiff's officers then computed and submitted its bid. In arriving at the bid estimate, one of the material factors considered was the number of square feet in the building. As was customary in the trade, plaintiff's officers relied upon the size specification set forth in the government's Invitation.

Plaintiff was awarded the contract, has satisfactorily performed the work contemplated, and was paid the contract price. However, shortly after undertaking the job plaintiff found that the work required considerably more servicing than had been estimated. It was then discovered that the building contained at least 9,000 square feet more than the specifications in the Invitation. It appears that in listing the area to be serviced, the government had omitted all lobbies, corridors and rest rooms. The error was confirmed by the government, but the Contracting Officer declined to make any adjustment. The Board of Contract Appeals refused to overrule the Contracting Officer and this action was brought under the Tucker Act, 28 U.S.C. 1346(a) (2).

The uncontested affidavit of plaintiff's president indicates that it incurred additional costs and loss of profit totalling $8,164.62 for the contract period in servicing the extra space. In addition its expenses in processing its claim were $529.31.

■ The government's principal contention in support of its motions is that plaintiff's claim is based upon a contract implied in law, over which this Court, as the plaintiff admits, would have no jurisdiction under the Tucker Act. It appears, however, that plaintiff is grounding its action on a breach of the express contract between the parties, jurisdiction over which is specifically provided in the Tucker Act.[1]

■ The plaintiff's argument is twofold—(1) the specifications as to the size of the building were express representations or warranties, binding upon the government, which were broken, entitling it to damages, and (2) the discovery of the actual size of the building constituted a "change" within the language of the contract which the government was bound to consider as the subject of an adjustment. The Court agrees with plaintiff.

Beginning with United States v. Utah, Nevada and California Stage Co., 199 U.S. 414, 26 S.Ct. 69, 50 L.Ed. 251, there is a long line of decisions from the federal judiciary to the effect that when the government, in its Invitation to Bid, undertakes to prescribe or define certain existing conditions material to the performance of the contract it is bound to these specifications and liable for any increased cost arising from their substantial variation. See for example, Hol-

---

[1]. 28 U.S.C. § 1346(a) (2), which provides: The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

  *     *     *     *     *

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or *upon any express or implied contract with the United States*, or for liquidated or unliquidated damages in cases not sounding in tort. [Emphasis supplied.]

lerbach v. United States, 233 U.S. 165, 172, 34 S.Ct. 553, 58 L.Ed. 898; Freund v. United States, 260 U.S. 60, 43 S.Ct. 70, 67 L.Ed. 131; United States v. L. P. & J. A. Smith, 256 U.S. 11, 41 S.Ct. 413, 65 L.Ed. 808; Railroad Waterproofing Corp. v. United States, 137 F.Supp. 713, 715, 133 Ct.Cl. 911 (1956); Kayfield Construction Corp. v. United States, 278 F.2d 217, 219 (2d Cir. 1960); United States v. Johnson, 153 F.2d 846, 848, 849 (9th Cir. 1946). Such is this case.

■ The government voluntarily undertook to state in its Invitation the size and character of the area to be serviced, facts which normally would be presumed to be within its specific knowledge. In fact, it was careful to amend the Invitation to reflect a change. This was consistent with its past practice. Equally consistent with the custom of the commercial cleaning industry was the plaintiff's reliance upon the accuracy of this specification, admittedly very material to its bid. Under such circumstances the government is bound to those specifications and plaintiff is entitled to recover the cost of the added work if the specifications are materially varied.

■ The government seeks to avoid the thrust of this position by contending that the bidders were instructed to make their own inspection of the building, thus relieving it of responsibility for any errors in the size specifications.[2]

This precise argument was rejected by the Supreme Court in Hollerbach v. United States, supra, in these words:

A government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument. In paragraph 33 the specifications spoke with certainty as to a part of the

conditions to be encountered by the claimants. True, the claimants might have penetrated the 7 feet of soft slushy sediment by means which would have discovered the log crib work filled with stones which was concealed below, but the specifications assured them of the character of the material,—a matter concerning which the government might be presumed to speak with knowledge and authority. We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it, rather than upon the claimants, must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt. If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity.

■ The government also relies upon its use of the term "approximately" in referring to the number of square feet in the building. That term has been defined as "near the amount, near to; about; a little more or less; close;" Black's Law Dictionary, p. 132, and "to come near; to approach," Webster's 20th Century Dictionary, 1956 Ed. p. 88. "Approximately," in this instance, would seem to mean approaching closely but not coinciding exactly. It is manifest that the specifications did not "come near

2. "The bidders should visit the building and take such other steps as may be reasonably necessary to ascertain *the nature and location of the work, and*

*the general and local conditions* which can affect the work or the cost thereof." [Emphasis added.]

to" or "approach" the actual size of the building.

■ The specifications recited that the office space to be cleaned consisted of 129,300 sq. ft., when actually, with the omitted corridors, lobbies and rest rooms in the area, the number of square feet exceeded 138,300, a variation of about 7%. The materiality of this difference is further revealed by the added cost to the contractor for this extra area. The contract price for cleaning the entire building, including the cafeteria and warehouse space, was $40,437.08. The extra cost to clean the total space exceeded $8,000.00, a difference of about 20%. Under these circumstances it is not reasonable to say that the original specifications "approximated" the actual amount of space to be serviced.

■ Plaintiff also contends that the United States violated the agreement when the Contracting Officer refused to treat the discovery of the actual size of the building as a "change" under the contract.[3] It is generally acknowledged that the broad purpose of such clauses is to make it possible for the government to obtain more favorable bids since the contractor is assured that he will be compensated for increased cost arising from conditions not anticipated by him and the government. See the excellent annotation: Public Contracts—Changed Conditions, 85 A.L.R.2d 211. Such clauses apply to variations in the amount of work to be done because of differences in stated specifications and actual conditions. See discussion by Mr. Justice Black in United States v. Rice, 317 U.S. 61, 63 S.Ct. 120, 87 L.Ed. 53.

In the Court's opinion these circumstances present just such a "change". At the time of this contract both parties were under the impression that the building was of a particular size. Both knew that the size of the building was material to the cost of performing the cleaning contract. After the contract was executed and the work commenced it was discovered that the building was larger, thus materially increasing the cost of performance. In refusing to follow the "change" provision, the Contracting Officer breached the terms of the agreement.

■ Finally, the government argues that the contract price was for cleaning the entire particular building, regardless of its size, and that its liability cannot exceed this price. It is true in the case of any such government contract that the total price is for performing the entire job, no matter how many components the total contract may contain. Nevertheless, this does not relieve the government of its responsibility for misleading the contractor as to what the various components consist of when their composition materially affects the cost of the contractor's performance.

The record contains no contradiction to plaintiff's assertion of its added costs. Had an adjustment been made in accordance with the contract, plaintiff would have been paid these costs evenly over the life of the contract, from October 1963 to October 14, 1964. Thus, it is proper that the plaintiff be paid interest thereon from the midpoint of this period, April 15, 1964.

■ In stating its expenses, plaintiff has included the cost of processing its claim at the administrative level, but

3. The "change" clause provides as follows:
"§ 12. Changes
"The Contracting Officer may at any time * * * make changes in the specifications of the contract and within the general scope thereof. * * * If such changes cause an increase or decrease in the amount due under the contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. Any claim for adjustment under this paragraph shall be asserted in writing within ten days from the date the change is ordered, provided, however, that the Contracting Officer, if he determines that the facts justify such action, may receive, consider and adjust any such claim asserted at any time prior to the date of final settlement of the contract. * * * *"

these expenses are not properly includable in its measure of damages.

Therefore, the defendant's motions to dismiss and for Summary Judgment are denied, and the plaintiff is hereby awarded Summary Judgment against defendant for $8,164.62, plus interest from April 15, 1964, plus costs of this action.

And it is so ordered.