# Richmond

DOYLE & RUSSELL, INC. v. WELCH PILE DRIVING CORPORATION.

March 5, 1973.

Record No. 7966.

Present, All the Justices.

*Robert F. Brooks* (*Lewis T. Booker; James E. Farnham; G. H. Gromel, Jr.; Hunton, Williams, Gay & Gibson,* on brief), for plaintiff in error.

*Benjamin P. Lynch, Jr.* (*William M. Harris; Taylor, Gustin, Harris, Fears & Davis,* on brief), for defendant in error.

POFF, J., delivered the opinion of the court.

This is an appeal by Doyle & Russell, Inc., from a summary judgment order entered on July 7, 1971, awarding Welch Pile Driving Corporation the full *ad dammum* in its amended motion for judgment.

Welch, subcontractor, claimed damages against Doyle, general contractor, the owner, and the owner's architect and engineer arising out of contracts for the construction of an addition to the Dixie

General Medical and Surgical Hospital for Hampton Training School for Nurses, Inc.

The defendants filed separate demurrers to the amended motion for judgment; all but that of Doyle were sustained.

At the pre-trial conference, the parties stipulated that the bases for Welch's cause of action would be that "(a) Plaintiff is entitled to certain additional sums for additional work done as evidenced by the execution of change orders D-1, D-2, and D-6; (b) Plaintiff is entitled to compensation for additional work done during the course of its stay on the job, which additional work is in addition to that provided in the subcontract and change orders thereto; (c) Plaintiff is entitled to consequential damages for delays incurred because of the failure of the owner and/or his agents to advise plaintiff of the final driving schedule within a reasonable time after the driving of the test piles on November 4 and 5, 1964, there being an implied obligation on the part of the defendant, Doyle & Russell, to Welch under their contract to so provide Welch with a final driving schedule within a reasonable period of time."

The parties stipulated further that "the delays complained of and the damages, if any, resulting therefrom were in no way occasioned or in any way caused by acts or omissions of Doyle & Russell or entities over whom Doyle & Russell had the right or obligation of direction or control."

In context with the stipulation, the trial court entered a pre-trial order ruling as a matter of law that Doyle could not raise the defense that the delays incurred by Welch were caused by those over whom Doyle had no control; that the contract documents did not afford Doyle any defense to Welch's claims; and that "the parties contemplated, at the time they entered into the contract, that damages, if any, to Welch resulting from delay caused by the owner or the architect or their agents were to be the responsibility of Doyle & Russell."

The trial court ordered further that Doyle should not disclose to the jury that the delays were caused by those over whom Doyle had no control and that Welch should not disclose to the jury that it had no cause of action against the owner or the owner's agents.

At trial, the evidence showed that the subcontract schedule required Welch to complete the pile driving project in 30 days. On November 4, 1964, Welch moved his crew and equipment on the job and proceeded to drive the test piles. Unexpected subsurface conditions were encountered. Differences of opinion developed

among the architect, the engineer, and Doyle's project manager concerning pile driving requirements, standards and procedures. As orders were given and countermanded, Welch complied, stopping or starting, continuing or suspending work according to the latest command. Between changes, there were protracted intervals in which Welch's crew and equipment stood idle. Some changes required Welch to perform work in addition to or different from the "scope of work" defined in the contract documents. As a result, the pile driving operation was not completed until January 20, 1965, some 78 days after commencement.

During the period of indecision and vacillation, three change orders were issued. Each was approved, by signature, by Doyle, the owner, and the architect. One required Welch to "Drive 6 addition 45' piles under west wall of North Wing."; another provided, as an exception to the original specifications, for "Pre-jetting for piles to an elevation of minus 16 . . . at the option of the Contractor on all remaining pile foundation work in the North Wing area."; the third gave authority to "Modify pile driving procedure in the South Wing as follows: . . .".

Each change order provided that "It is acknowledged that a change in price is involved subject to later determination." Welch submitted three itemized invoices addressed to the three change orders. No item was challenged as unreasonable, and Doyle's project manager testified that he considered them fair.

At the conclusion of all the evidence, the trial court sustained Welch's motion to strike Doyle's evidence and entered summary judgment for Welch. The judgment order was based on the three change orders, and damages were measured by Welch's three invoices in the total sum of $22,874.78. The trial court denied Welch's claim for interest from January 20, 1965, the date of completion of his contract. Doyle gave notice of appeal and assigned as error the trial court's rulings in the pre-trial order and the entry of summary judgment for Welch. Welch assigned as cross error the ruling denying interest.

The essential question raised by Doyle's several assignments of error is whether a general contractor is liable to its subcontractor for damages flowing from delays not caused by the general contractor or any person or circumstance under his control.

Absent a contractual commitment *contra*, a general contractor is not liable to its subcontractor for damages flowing from delays incurred by the subcontractor unless the delays were caused by the

general contractor or some agency or circumstance under his direction or control. *Norcross* v. *Wills*, 198 N.Y. 336, 91 N.E. 803 (1910); *McGrath* v. *Electrical Construction Company*, 230 Ore. 295, 364 P.2d 604 (1961).

Doyle did not cause the delays. The question is whether Doyle had either an agency responsibility or a contractual responsibility for delay damages (as distinguished from compensation for additional work).

Clearly, there was no agency responsibility; the parties stipulated that neither Doyle nor any entities over whom Doyle had direction or control *caused* the delays.

However, the parties did not stipulate that Doyle had no contractual responsibility for the consequences of the delays. The thrust of the trial court's pre-trial rulings, to which error is assigned, was that Doyle had assumed such contractual responsibility.

Article I of the subcontract, headlined "Scope of Work", provides in part:

"The lump sum amount of this Subcontract is based on the number and lengths of piles specified. In the event the total number of piles or the approved scheduled lengths, or the minimum penetration specified be changed at the direction of the Architect, an adjustment in the Subcontract amount will be made as follows: . . ."

Article IV of the subcontract, headlined "Changes in the Work", provides in part:

"The Contractor may modify, change, omit or add to the 'Scope of the Work', and in such event the parties hereto agree that the price shall be equitably adjusted and that all other provisions of this Subcontract shall apply. No such modification, change, addition or omission shall be binding unless authorized in writing by the Contractor. . . ."

Article V of the subcontract, headlined "Time of Performance", provides in part:

"Should the Subcontractor be delayed in the prosecution and completion of the work by any fires, strikes, accidents, acts of God or other cause beyond the control of the Subcontractor, the schedule herein set forth shall be adjusted as determined by the Contrac-

tor. However, no such adjustment shall be made unless claim therefor is presented to Contractor in writing within forty-eight (48) hours after the occurrence of the delay."

■ From the face of the subcontract it appears that the parties recognized that unforeseen and unforeseeable circumstances (such as subsurface conditions) might arise; that the "scope of the work" might have to be modified; that delays caused by acts of God "or other cause" (such as conflicting orders of the owner's agents) might occur; that changes in specifications, methodology and schedules might have to be made; and that such changes would be made by change orders authorized in writing by the contractor.

The subcontract further provides that equitable adjustments will be made in the contract price for any work performed pursuant to change orders approved by the contractor that "modify, change, omit or add to the 'Scope of the Work' ". To the extent that work performed by Welch meets that definition, Welch is entitled to an adjustment in compensation.

Part of the damages claimed in Welch's invoices appears to be related to such work. Part seems to be related to losses Welch sustained, not on account of such work, but on account of standby expenses of crew and equipment idled on the job site by delay.

As we have said *supra*, since Doyle had no personal or agency responsibility for the delays, Doyle is not liable to Welch for such delay expenses unless Doyle assumed a contractual responsibility when it signed the subcontract or when it signed the change orders which were in the nature of amendments to the subcontract. In its pre-trial order, the trial court ruled as a matter of law that "the parties contemplated, at the time they entered into the contract" that Doyle assumed such responsibility; and the final order sustaining Welch's motion for summary judgment was the consequence of that ruling.

At the time the pre-trial order was entered, no evidence as to the intent of the contracting parties concerning delay damages had been adduced, and necessarily the ruling was based upon the trial court's construction of· the contract documents. At trial, with respect to both the subcontract itself and the change orders amending it, such evidence was foreclosed by the pre-trial order.

The order did not cite language in the contract documents supporting the ruling. Rather, the ruling seems to have been based on

an absence of language providing that Doyle would not be responsible for delay damages.

Indeed, there is no explicit language supporting the ruling as a matter of law. But we do not see how an absence of language in the converse is a sufficient basis for the ruling.

Nor do we find language which would support a ruling as a matter of law opposite to the trial court's ruling. The only pertinent language we find, either in the subcontract or the change orders, is at best ambivalent and, unilluminated as it is by evidence clarifying the intent of the parties, impossible of confident construction as a matter of law.

The jury should have been permitted to receive and consider such evidence and, in context with the language of the subcontract and change orders, to decide the factual question of intent with respect to contractual responsibility for delay damages. With respect to work performed by Welch beyond the "scope of the work," the jury should also have been permitted to determine from the evidence what adjustment in compensation was equitable. The trial court erred in its pre-trial order and in its final order sustaining Welch's motion for summary judgment. The judgment will be reversed and the case remanded for a new trial.

■ The assignment of cross error is without merit. Code § 8-223 changes the common law and permits the jury or the court to allow interest on the verdict or judgment. Its language is permissive. Whether to allow interest is left to the sound discretion of the jury or trial court. *Safway Steel Scaffolds v. Coulter,* 198 Va. 469, 94 S.E. 2d 541 (1956).

*Reversed and remanded.*