W. WRIGHT, INC., APPELLEE, v. KORSHOJ CORPORATION, APPELLANT.

250 N. W. 2d 894

Filed February 23, 1977. No. 40628.

Thomas F. Dowd, for appellant.

Wayne J. Mark of Fraser, Stryker, Veach, Vaughn & Meusey, for appellee.

Heard before WHITE, C. J., McCOWN, NEWTON, and BRODKEY, JJ., and RONIN, District Judge.

BRODKEY, J.

This is an appeal from the verdict of a jury, and judgment entered thereon, by the District Court for Douglas County, upholding the claim of a subcon-

tractor for damages against the prime contractor for additional expenses incurred by the subcontractor as a result of suspension of work on a contract between the U.S. Government and the prime contractor. We affirm in part, and in part reverse and remand with directions.

In May 1972, the United States Government, through the Corps of Engineers, awarded a general contract to Korshoj Corporation ("Korshoj"), the defendant and appellant herein, for the construction of cooling towers and miscellaneous items at Offutt Air Force Base. W. Wright, Inc. ("Wright"), the plaintiff and appellee herein, submitted a bid as a subcontractor to Korshoj. This bid was accepted and a subcontract was executed on May 24, 1972. Under this subcontract, Wright agreed to be bound by all terms and conditions of the general contract, which was incorporated by reference into the subcontract. Wright agreed to do the mechanical work on the project, and the subcontract obligated Wright "to furnish materials and perform all of the work to be done by him hereunder promptly and in due time when required and as directed by the Contractor * * *." The subcontract also provided that Wright "shall be bound by any changes, alterations or amendments as is the Contractor made by the Owner concerning the subject matter of this contract." The subcontract contained no provision regarding remedies for Wright should the project be delayed, causing additional expenses to Wright. The subcontract price was $228,500, and it provided that "the Subcontractor shall not be entitled to nor receive any compensation for extra work or additional work unless such extra work or additional work is approved in writing by the Contractor through its office at Omaha, Nebraska."

The general contract provided that the project was to be completed within 180 days after the time the Corps of Engineers gave Korshoj notice to proceed. The general contract provided that Korshoj was en-

titled to an equitable adjustment on the contract price if changed site conditions caused an increase in its cost of, or time required for, performance of any part of the work. It also permitted the Corps of Engineers to suspend, delay, or interrupt the work, but Korshoj was entitled to an adjustment in contract price in the event that such suspension, delay, or interruption caused an increase in its cost of performance.

Korshoj received notice to proceed on May 15, 1972, and began work within 10 days, in accordance with the terms of the general contract. A rain washout created difficulty with the proposed project site, however, and as a result work was delayed until July 6, 1972, at which time the Corps of Engineers agreed to certain modifications regarding the changed site, and again advised Korshoj to proceed.

Although Wright did minor work on the project in July, it was unable to do its primary job because completion of the concrete shells in the cooling towers, work to be done by Korshoj, was required before Wright could begin its mechanical work of installing "internals" in the towers. Both parties understood that Wright's primary job would take 90 to 120 days after the completion of the concrete shells in the towers by Korshoj.

Subsequently Korshoj entered into negotiations with the Corps of Engineers to obtain time extensions on the general contract due to the delays caused by the changed site conditions. Ultimately three modifications were signed by Korshoj and the Corps of Engineers, extending the completion date on the project from November 12, 1972, to March 12, 1973. Pursuant to these modifications, Korshoj received adjustments on the contract price, including extra compensation for additional supervisory and overhead expenses caused by the delays.

When Wright learned that Korshoj was seeking extensions on the general contract, it advised Korshoj, first orally and then in writing, that it wished to be

compensated for additional costs it was incurring due to the delays on the project. Korshoj did not immediately respond to Wright's request, but continued to negotiate for extensions of time with the Corps of Engineers, and eventually signed the general contract modifications which granted the extensions of time without advising Wright of that fact. Korshoj then notified Wright that the completion date for the project had been extended to March 12, 1973. A week after so advising Wright, Korshoj wrote Wright and stated that "[i]f you intend to be paid for any additional work or compensations your documented statements should also be presented to this office for submittal to proper authority promptly." Wright then submitted to Korshoj a claim of $4,400 as its increased costs due to the delays, costs which consisted of additional supervisory and overhead expenses.

Korshoj forwarded Wright's claim to the Corps of Engineers. The Corps rejected the claim, stating that it could not address the matter because all modifications between it and Korshoj had been negotiated for price and time extensions in good faith, and that they were complete and beyond further requirements by the Corps. Korshoj advised Wright of the Corps' rejection of Wright's claim, and Wright then informed Korshoj that it was looking to Korshoj for payment. Korshoj replied, stating that it would deny Wright's claim because Korshoj was not responsible for any of the delays on the project.

Wright did complete its work on the project, working in the completed towers from January 1973, to April 1973. It was unable to begin its work in the towers until January 1973, because Korshoj had not completed the towers until that time. It is undisputed that Wright did work on the job continuously from November 1972, to April 1973, but that it did so with a reduced work force because the delays prevented it from doing the work in 90 to 120 days with a full-work force. It is

clear that Wright incurred additional supervisory and overhead expenses due to having to complete the work over an extended period of time.

Wright subsequently brought an action against Korshoj on January 23, 1974, alleging that during "the course of the work under Plaintiff's subcontract certain changes in and additions thereto were directed by the Corps of Engineers and Defendant for which Plaintiff was and is entitled to additional compensation under the terms of the contract documents." This allegation was subsequently amended to delete the words "under the terms of the contract documents." The petition listed among the changes "additional supervisory and overhead expense incurred as a result of the suspension of the work, during the course thereof, by the owner and Defendant," said expense being $4,400. The petition also alleged that Korshoj owed Wright a total of $1,593.45 for other work that Wright had performed, but the parties stipulated during trial that Wright was entitled to this claim, and this part of the petition is not at issue in this appeal. Korshoj denied the allegations of the petition, although it admitted "that during the course of the work under Plaintiff's subcontract certain changes in and additions to the work were directed by the Corps of Engineers * * *." Korshoj also counter-claimed, alleging that Wright owed it $5,274.30 for work that Korshoj had completed on Wright's behalf.

Thus the only issues tried to the jury were (1) whether Wright was entitled to recover $4,400 of additional supervisory and overhead expenses due to the delays in the work; and (2) whether Korshoj was entitled to recover $5,274.30 for work it performed for Wright. The jury returned a verdict in favor of Wright on its claim for the $4,400; and awarded Korshoj $454.50 on its counter-claim. The jury also awarded Wright $1,593.45, for which the parties stipulated that Korshoj was liable, bringing Wright's total award to

$5,993.45. This appeal does not involve the award to Korshoj of $454.50, and the only issue presented for consideration is whether Wright was entitled to recover $4,400 for additional supervisory and overhead expenses incurred as a result of the delays on the project.

Korshoj's assignments of error are as follows: (1) The District Court erred in refusing to grant Korshoj's motion for a directed verdict and judgment notwithstanding the verdict because the evidence was insufficient as a matter of law and the verdict was contrary to law; and (2) the District Court erred in instructing the jury. Korshoj contends that it cannot be held liable for Wright's claim because it did not cause the project to be delayed or suspended; and because it did not breach any term of its subcontract with Wright, as the subcontract does not contain any provisions making Korshoj liable to Wright for additional expenses incurred as a result of delay on the project. Korshoj also argues that instructions Nos. 7 and 17 were erroneous because they either referred to agreements of which there was no evidence in the record, or because they injected into the case an oral contract which was neither plead nor proved. The thrust of these instructions, as we interpret them, is that the jury was instructed that it could return a verdict in favor of Wright if it found that Korshoj had breached the subcontract, or an oral amendment thereto, by not paying Wright for additional supervisory and overhead expenses incurred due to the time extensions on the general contract.

Wright contends on appeal that it is entitled to its claim under the subcontract; or alternatively, that the parties had effectively modified their original agreement so as to provide that Korshoj would pay Wright for the latter's additional expenses incurred due to the delays on the project.

The law in Nebraska is clear that a contractor is entitled to recover damages resulting from delay caused by a breach of contract by the other party. Roberts

Constr. Co. v. State, 172 Neb. 819, 111 N. W. 2d 767
(1961); Siefford v. Housing Authority of the City of
Humboldt, 192 Neb. 643, 223 N. W. 2d 816 (1974); Parsons Constr. Co. v. State, 180 Neb. 839, 146 N. W. 2d
221 (1966). The Nebraska rule is in accord with the
law in other jurisdictions. See Annotation, 16 A. L. R.
3d 1252.

The first question in this case, therefore, is whether
the evidence supports a view that Korshoj breached its
contract with Wright so that Wright was delayed. We
find that it does not. First, there is no dispute that
the changed site conditions were the cause of the delay, and Wright admitted at trial that it knew of no
acts on the part of Korshoj which caused the delay.

Secondly, Korshoj did not agree in the subcontract
to provide Wright with access to the site by a particular
date. The only time provision in the subcontract was
that the job was to be completed within 180 days after
Korshoj received notice to proceed, and this term was
in the subcontract by virtue of the fact that the general contract was incorporated into the subcontract by
reference. The subcontract, however, also incorporated
the other provisions of the general contract, which provided for changes and time extensions on the general
contract, and Wright acknowledged at trial that it was
bound by such provisions. The subcontract itself provided that Wright "shall be bound by any changes, alterations or amendments as is the contractor by the
owner concerning the subject matter of this contract."
Thus it cannot be said that Wright and Korshoj had a
fixed agreement that the project would be completed
within 180 days, since both knew that the Corps of Engineers could suspend work or extend the time of performance; and it cannot be said that Korshoj agreed to
complete its work so that Wright would have adequate
time to do its job before 180 days expired, regardless of
whether the Corps of Engineers ordered changes which
caused delay. Indeed, Wright agreed in the subcon-

tract to "perform all of the work to be done by him hereunder promptly and in due time when required and as directed by the Contractor * * *." These facts indicate that Korshoj did not breach its contract with Wright so as to cause Wright delay; nor did Korshoj breach any term in the subcontract in reference to time of performance or to providing Wright access to the site on a given date. No evidence in the record supports the view that Korshoj breached the subcontract, causing the delay, and therefore Korshoj cannot be held liable to Wright under the doctrine of Roberts Constr. Co. v. State, *supra*.

Korshoj's liability, if any, must rest on some contractual commitment by it to reimburse Wright if delay occurred, regardless of the cause of the delay. As stated in Doyle & Russell, Inc. v. Welch Pile Driving Corp., 213 Va. 698, 194 S. E. 2d 719 (1973), "[a]bsent a contractual commitment contra, a general contractor is not liable to its subcontractor for damages flowing from delays incurred by the subcontractor unless the delays were caused by the general contractor or some agency or circumstance under his direction or control." 194 S. E. 2d at 721. See, also, McGrath v. Electrical Constr. Co., 230 Ore. 295, 364 P. 2d 604 (1961), rehearing denied, 230 Ore. 309, 370 P. 2d 231; and generally, Annotation, 16 A. L. R. 3d 1252. The questions which will resolve the issue in this case, then, are (1) whether the evidence supports a view that the subcontract, when signed, obligated Korshoj to reimburse Wright for additional expenses incurred due to a delay, regardless of who or what caused the delay; and (2) if not, whether the parties subsequently modified their contract such that Korshoj agreed to reimburse Wright for such additional expenses. These questions will be discussed in the order presented.

The subcontract by itself does not expressly provide that Korshoj shall be liable to Wright for additional expenses incurred due to delay. The only term in the

subcontract that is even possibly relevant is as follows: "The Subcontractor shall not be entitled to nor receive any compensation for extra work or additional work unless such extra work or additional work is approved in writing by the Contractor through its office at Omaha, Nebraska." Although both parties refer to this clause in their briefs, and Wright argues that it does not bar it from its claim, we do not believe that it is relevant to Wright's claim, which is for *expenses* caused by delay, not for reimbursement for *extra or additional work*. The clause quoted above refers to extra or additional work preformed by Wright, work which Wright was not obligated to do under the subcontract when signed. Wright's claim in this appeal is not for reimbursement for extra or additional work, but for additional expenses incurred while doing the very work it was obligated to do under the subcontract when it was signed. We conclude that this clause in the subcontract does not resolve the issue in the case. See, Annotation 2 A. L. R. 3d 620, Effect of Stipulation, In Private Building or Construction Contract, That Alterations Or Extras Must be Ordered in Writing, § 7-15; 13 Am. Jur. 2d, Building and Construction Contracts, § 22, pp. 24, 25.

Since the subcontract itself does not provide that Korshoj shall be liable to Wright for additional expenses caused by delay, Wright must rely on the fact that the subcontract incorporated by reference the general contract, which provided that Korshoj was entitled to equitable adjustments from the Corps of Engineers in the event of delays. It is undisputed that under the general contract Korshoj was entitled to, and did, recover additional expenses it incurred due to the delays. Essentially, Wright's contention is that it is entitled to recover delay expenses from Korshoj because Korshoj was entitled to recover delay expenses from the Corps of Engineers.

In refuting Wright's contentions, Korshoj argues

that two Supreme Court cases mandate reversal of this case. In United States v. Rice, 317 U. S. 61, 63 S. Ct. 120, 87 L. Ed. 53 (1942), and United States v. Foley, 329 U.S. 64, 67 S. Ct. 154, 91 L. Ed. 44 (1946), the Supreme Court held that an extension of time provision in a government construction contract was the sole remedy for the contractor when unforeseen delays occurred; and that the contractor could not receive damages for the delay because the government had not obligated itself to pay damages to the contractor solely because of delay. Standard government construction contracts were subsequently changed to avoid the harsh result of Rice, and now provide that equitable adjustments in contract price shall be made when delay occurs. See Burgess Constr. Co. v. M. Morrin & Son Co., Inc., 526 F. 2d 108, 114, n. 3 (10th Cir., 1975). Thus Rice and Foley are not particularly helpful in our case since different government contracts were construed in those cases.

However, another case relied on by Korshoj is definitely relevant. Southern Fireproofing Co. v. R. F. Ball Constr. Co., Inc., 334 F. 2d 122 (8th Cir., 1964), was a diversity case in which a subcontractor sued a general contractor for delay damages caused by unanticipated subsurface conditions at the project site. The delay was not the fault of the general contractor.

The court found that the subcontractor was not entitled to damages caused by the delay, despite the fact that the general contractor was entitled, under the general contract, to receive adjustments on the general contract due to the unanticipated difficulty with the subsurface conditions. The court found that the general contractor's right to obtain an adjustment from the project owner did not confer on the subcontractor the derivative protection of being able to receive additional compensation from the general contractor. The court stated that had the parties intended that the general contractor be liable to the subcontractor for

delay damages, they would have said so in their subcontract. We find the Southern Fireproofing decision persuasive, and believe that it was correct in its holding that a subcontractor does not obtain any rights against a prime contractor simply because the prime contractor is entitled to certain rights under the general contract, even though the general contract is incorporated into the subcontract.

Wright relies on United States v. Piracci Constr. Co., Inc., 405 F. Supp. 908 (D.D.C., 1975), in support of its position, and also a companion case, United States v. Piracci Constr. Co., Inc., 405 F. Supp. 904 (D.D.C., 1975). In those cases an action was brought by a subcontractor against a general contractor and his surety under the Miller Act, 40 U. S. C., § 270b (1970), which provides that persons who provide materials and labor on projects involving the construction of public buildings shall have the right to sue on the government contractor's bond to recover any costs to which they are rightfully entitled. In both cases the court found that a subcontractor, under the Miller Act, was entitled to recover from the prime contractor and his surety increased costs incurred due to delay to the extent that such delay was not attributable to the subcontractor, even though the prime contractor did not cause the delay.

Although these two cases generally support the position Wright takes in its brief, it should be noted that they arise under the Miller Act. The court stated that the "* * * key to recovery under the Miller Act is not the theory upon which liability is predicated, but the actual investment by a subcontractor of time and materials in a federal project." 405 F. Supp. at p. 909. "* * * plaintiff's cause of action is not defeated by such technical exercises as analyzing whether the claim arose within or without the contract or by determining if the added costs were indispensible to satisfactory contractual performance." 405 F. Supp. at 907. Thus the

holding of the Piracci cases is relevant to cases arising under the Miller Act, which provides a statutory cause of action, but does not resolve the issue in this case, which is one based solely upon the subcontract between Korshoj and Wright. Since this is the situation, we believe that the result in this case depends on whether Korshoj is liable to Wright under the subcontract, and that question must be resolved by referring to the law of contracts, not to cases interpreting the Miller Act.

The contract documents in this case do not impose on Korshoj the obligation to reimburse Wright for additional expenses Wright incurred due to the delays. The contract documents are in no sense ambiguous so as to raise an issue of fact with regard to the intent of the parties, and therefore interpretation of the contract was a matter of law for the court. Grantham v. General Telephone Co. of the Midwest, 191 Neb. 21, 213 N. W. 2d 439 (1973). Both parties were experienced contractors, and had the intent of the parties been that Korshoj should be liable to Wright for delay expenses, a provision to that effect should have easily been inserted into the subcontract. This court is not permitted to speculate or to supply terms to a contract that the parties have not seen fit to set forth. Yelkin v. Yelkin, 193 Neb. 789, 229 N.W. 2d 59 (1975). The fact that Korshoj was entitled to delay expenses from the project owner under the general contract does not confer upon Wright the right to collect delay expenses from Korshoj, and to so hold would contradict the plain language of the contracts. Finally, the subcontract itself provided that Wright would "perform all of the work to be done by him hereunder promptly and in due time when required and as directed by the Contractor" and established a fixed contract price. We find that the subcontract, as signed, did not obligate Korshoj to reimburse Wright for delay expenses, and therefore Korshoj cannot be held liable for failing to do so.

We note that Wright emphasizes in its brief the fact that Korshoj failed to submit Wright's claims to the Corps of Engineers when the modifications to the general contract were executed. Wright's claim, however, was not made on the theory that Korshoj was obligated to make a timely submission of Wright's claims to the Corps of Engineers, and that Korshoj was liable to Wright for failing to do so. Wright did not rely on such a theory in either its pleadings or at the trial, and therefore the jury verdict cannot be sustained on that basis. The subcontract did not obligate Korshoj to submit Wright's claims to the Corps of Engineers, and therefore Korshoj incurred no liability for failing to do so.

The final issue is whether the parties effectively modified their contract by oral agreement to the effect that Korshoj agreed to compensate Wright for expenses incurred due to the delays. The law in Nebraska is clear that a written executory contract may be modified by the parties thereto at any time after its execution and before a breach has occurred, without any new consideration; and that the terms of a written executory contract may be changed by a subsequent parol agreement before a breach thereof. Andrews v. Wilkie, 181 Neb. 398, 148 N. W. 2d 924 (1967); Campbell v. Kirby, 195 Neb. 610, 239 N. W. 2d 792 (1976). Wright contends that Korshoj's request for data regarding Wright's increased costs and Korshoj's forwarding Wright's claim to the Corps of Engineers show that the parties had modified their contract so that Wright would be compensated for his additional expenses. Wright points to no evidence, however, and the record discloses none, that Korshoj actually made an oral agreement, subsequent to the signing of the subcontract, to compensate Wright for Wright's additional expenses. What the evidence shows is that Wright told Korshoj of its claim, that Korshoj told Wright to prepare data on its claim so that it could be forwarded to

the proper authority, and that Korshoj did forward Wright's claim to the Corps of Engineers. Such evi-. dence does not establish that Wright and Korshoj modidfied their subcontract to provide that Korshoj would compensate Wright for its additional costs. It is the law that if a party to an existing contract proposes a modification thereof, the mere silence of the other party leaves the contract as before without modification. The Elgin Mills, Inc. v. Melcher, 181 Neb. 17, 146 N. W. 2d 573 (1966).

We hold, therefore, that as a matter of law Korshoj was entitled to a directed verdict in its favor. The contract documents in this case are clear that Korshoj had no obligation to reimburse Wright for expenses Wright incurred due to the delays, and there was no sufficient evidence that the parties modified their agreement to impose such an obligation upon Korshoj.

We reverse the judgment and remand the cause with directions to vacate that part of the judgment in the amount of $4,400 in favor of Wright, and to dismiss that part of the petition which claimed damages for additional supervisory and overhead expenses incurred by Wright. The additional judgment of $1,593.45 in favor of Wright, and the judgment of $454.50 in favor of Korshoj, which neither party has contested on appeal, are affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.