ATOKAD AGRICULTURAL AND RACING ASSOCIATION, APPELLEE AND CROSS-APPELLANT, V. THE GOVERNORS OF THE KNIGHTS OF AK-SAR-BEN, APPELLANT AND CROSS-APPELLEE.
466 N.W.2d 73

Filed March 1, 1991.   No. 88-716.

David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Gregory M. Thomas, of Sodoro, Daly & Sodoro, for appellee.

WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

In this breach of contract case, defendant, The Governors of the Knights of Ak-Sar-Ben, appeals an adverse $50,000 jury verdict and judgment and a $10,932 prejudgment interest award, both in favor of plaintiff, Atokad Agricultural and Racing Association.

Both parties are Nebraska nonprofit corporations operating horseracing tracks. The parties, along with other tracks in Lincoln, Columbus, and Grand Island, were members of and active in the Thoroughbred Racing Association of Nebraska (TRAN), which promoted their mutual racing interests. Horseracing is closely regulated by Nebraska statutes.

Ak-Sar-Ben had financially assisted Atokad in its cash-flow problems in 1984 and prior years, including an agreement to pay Atokad's unpaid parimutuel taxes for 1983 to 1986, which taxes were paid in annual installments of about $61,000.

In 1984, plaintiff and defendant entered into a written contract whereby defendant agreed to pay $50,000 to plaintiff at the close of defendant's racing season in 1985 and 1986. Part of the consideration for the separate 1984 contract was that Ak-Sar-Ben could sponsor race programs on specified Sundays in competition with Atokad, which regularly had race programs on Sundays. Ak-Sar-Ben made the 1985 payment. Upon due demand, defendant refused to make the 1986 payment, claiming it was canceled by oral agreement of the parties modifying the 1984 contract. Plaintiff commenced suit on May 4, 1987, alleging the written contract and its breach. Defendant answered, including its affirmative defense of oral modification. Defendant's motion for summary judgment was denied.

Late in 1985, officers of Atokad were proposing legislation whereby each Nebraska track would contribute 1 percent of its exotic wagers, e.g., exactas, daily doubles, etc., to be placed in a small-track fund for distribution to certain Nebraska tracks, including Atokad, for their benefit and for better purses. Most of the other TRAN tracks were sponsoring various forms of

legislation favorable to their separate interests.

These legislative proposals were discussed in TRAN meetings during December 1985 and January 1986. The tracks shared the common thread of presenting united industry support of legislation, including their early general support for Atokad's bill, 1986 Neb. Laws, L.B. 1041, providing a $1/2$-percent contribution rate. However, Atokad insisted that Ak-Sar-Ben's share should be 1 percent, because Atokad needed about $300,000 to begin racing in 1986, and those needs would be met only if Ak-Sar-Ben, as the largest betting volume track, contributed 1 percent.

At the January 31, 1986, TRAN meeting, L.B. 1041 was a main item for discussion. Robert Volk, general manager of Ak-Sar-Ben, offered to contribute three-fourths percent upon condition that Atokad forgive the 1984 contract. Atokad representatives responded that Atokad needed more money than the three-fourths percent would produce, and insisted that Ak-Sar-Ben should give 1 percent. Atokad made no response to the condition of forgiving the 1984 contract.

Following that meeting, officers of Ak-Sar-Ben and Atokad continued their discussion informally in the hall outside the meeting room. Robert Skochdopole, attorney for Ak-Sar-Ben and lobbyist for TRAN, did most of the talking, urging an early unified TRAN compromise agreement to present at a legislative committee hearing on L.B. 1041 to be held on February 11, 1986. He finally asked Atokad representatives, including Maurice Topf, whether, if Ak-Sar-Ben agreed to contribute 1 percent, Atokad would support that legislation and forgive the $50,000 contract payment. Atokad representatives understood the proposition, but did not agree to forgiving the $50,000; they did agree to present it to Atokad's board of directors, and Ak-Sar-Ben representatives agreed to present the proposition to Ak-Sar-Ben's board.

The Ak-Sar-Ben board of directors later approved the 1-percent proposal conditioned on forgiving the 1984 contract. There is no record of any similar approval by the Atokad board of directors.

A few days after January 31, 1986, while Volk and other Ak-Sar-Ben representatives were attending a racing meeting in

Florida, Volk telephoned Topf and told him that Ak-Sar-Ben would agree to the 1-percent contribution. Nothing was said about the 1984 contract. Volk and other Ak-Sar-Ben representatives testified that the cancellation of the 1984 contract was assumed by the silence of Atokad and its representatives and their later cooperation in sponsoring L.B. 1041.

Following this telephone call, Skochdopole was instructed to and did redraft L.B. 1041 to provide for Ak-Sar-Ben's 1-percent contribution. Copies of the new draft of L.B. 1041 were circulated to all TRAN members prior to their meeting on February 11, 1986. At that meeting, all TRAN members, including Atokad, approved L.B. 1041 and agreed to support its passage in the Legislature, and the bill later became law as Neb. Rev. Stat. § 2-1208.04 (Cum. Supp. 1986). Atokad representatives did support the bill, and in 1986 Atokad received about $230,000 in small-track funds.

Defendant assigns three errors: (1) the denial of its motion for summary judgment, (2) the giving of the court's instruction No. 6, and (3) the award of prejudgment interest.

Plaintiff cross-appeals, claiming the court erred in failing to grant its motion for a directed verdict against defendant's affirmative defenses.

## SUMMARY JUDGMENT

Defendant's motion for summary judgment, as supported by an affidavit in the court file, claimed defendant was entitled to judgment upon its request for admissions that plaintiff had failed to answer. The motion was set for hearing on November 24, 1987. On November 23, 1987, plaintiff filed a motion for extension of time to reply to the requests.

At the hearing on November 24, defendant marked as an exhibit and made reference to its filed affidavit supporting its motion; however, it was never introduced into evidence. The only evidence in the hearing's bill of exceptions is an affidavit offered by plaintiff in support of its resistance to the motion. The court denied defendant's motion for summary judgment and granted plaintiff additional time to reply to the request for admissions.

The party moving for summary judgment has the burden of showing, by the evidence produced, that no genuine issue as to any material fact exists. See *City Bank & Trust Co. v. Van Andel*, 220 Neb. 152, 368 N.W.2d 789 (1985).

Assignments of error requiring an examination of the evidence are not available on appeal in the absence of a bill of exceptions, even though certain evidence has been filed in the office of the clerk of the trial court. Where there is no bill of exceptions, it will be presumed on appeal that the evidence supports the trial court's judgment, and, if an examination of the pleadings supports the judgment, it will not be reversed. See *Snyder v. Nelson*, 213 Neb. 605, 331 N.W.2d 252 (1983). As there was no evidence presented by defendant in the hearing's bill of exceptions and the pleadings support the judgment, defendant's motion for summary judgment was properly denied.

## INSTRUCTION NO. 6

In connection with defendant's affirmative defense of an oral modification of the 1984 contract, the court included in its instruction No. 2 that defendant had the burden to prove: "1. That the contract was modified by the mutual assent of each of the parties. Mutual assent is defined in Instruction No. 6 (2) That AK-SAR-BEN has fully complied with the agreement as modified."

Instruction No. 6 recites:

> You are instructed that "mutual assent" as used in Instruction No. 2 means the meeting of the minds of both of the parties to a contract; the fact that each agrees to all the terms and conditions in the same sense and with the same meaning as the others. "Mutual assent of the parties may be shown by their acts or conduct, and the surrounding circumstances. *If a party to an existing contract proposes a modification thereof, the mere silence of the other party leaves the contract as before without modification.*["]

(Emphasis supplied.)

At the court's instruction conference, defendant objected to the last sentence in instruction No. 6, claiming it was confusing

and indicated to the jury that an express agreement of assent was required. Defendant's objection was overruled.

"A litigant is entitled to have the jury instructed only upon those theories of the case which are presented by the pleadings and which are supported by competent evidence." *Swartz v. Peterson*, 199 Neb. 171, 174, 256 N.W.2d 681, 684 (1977). The meaning of an instruction, not its phraseology, is the important consideration, and an assertion of prejudice will not be sustained when the meaning of the instruction is reasonably clear. *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990).

The terms of a written executory contract may be changed by a subsequent parol agreement prior to any breach of such contract. *Frenzen v. Taylor*, 232 Neb. 41, 439 N.W.2d 473 (1989). A modification of a contract which substantially changes the liability of the parties ordinarily requires mutual assent to be effective. *Grand Island Prod. Credit Assn. v. Humphrey*, 223 Neb. 135, 388 N.W.2d 807 (1986). "[I]t is not essential that the mutual assent of the parties to modify the contract be express . . . it may be implied from acts and circumstances . . . from a course of conduct . . . and from acts of one party in accordance with the terms of a change proposed by the other." 17A C.J.S. *Contracts* § 375 at 427 (1963). A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties themselves as to all of the details of the proposed agreement; it may be implied from conduct and the surrounding circumstances. See *Woods v. Woods*, 177 Neb. 542, 129 N.W.2d 519 (1964). Likewise, the acceptance of an offer may be shown by words, conduct, or acquiescence indicating agreement. See *Overman v. Brown*, 220 Neb. 788, 372 N.W.2d 102 (1985).

Concerning mutual assent, which was a fact question for the jury, it was Ak-Sar-Ben's theory that Atokad agreed to modify the 1984 contract by forgiving the 1986 $50,000 payment as shown by the parties' conversations, their conduct, and all of the surrounding circumstances. Ak-Sar-Ben had the burden to show that instruction No. 6 was prejudicial or that it adversely affected a substantial right. See *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989).

It was Atokad's theory that there was no competent evidence of its statements or conduct showing assent to the modification proposed by Ak-Sar-Ben; rather, the only evidence for the jury was Atokad's silence to Ak-Sar-Ben's proposed contract modification, which silence was not mutual assent. Atokad relies on *W. Wright, Inc. v. Korshoj Corp.*, 197 Neb. 692, 705, 250 N.W.2d 894, 901 (1977), which states that "if a party to an existing contract proposes a modification thereof, the mere silence of the other party leaves the contract as before without modification."

There was evidence in the record, if believed, supporting both theories and requiring appropriate instructions. We disagree with the court's treatment of those two theories as included in instruction No. 6, particularly the use of the phrase "mere silence" in the last sentence, without further definition and explanation.

> As a general rule, mere silence does not constitute an acceptance of an offer. Silence alone does not give consent, even by estoppel, since there must not only be the right, but the duty, to speak before the failure to do so can estop a person afterward to set up the truth, particularly where the silence or inaction has an uncertain or ambiguous meaning and the parties have reasonable differing views as to what was in fact meant. It is otherwise if the relationship of the parties, their previous dealings, or other circumstances are such as to impose a duty to speak; and, if in such a case the offeree's silence or inaction conveys but one reasonable meaning, intentional assent on his part is not a requisite.

17 C.J.S. *Contracts* § 41 e. at 670-71 (1963). See, also, 17 Am. Jur. 2d *Contracts* § 47 (1964). We have also said that acceptance of an offer may also be indicated by silence and inaction. See *Joseph Heiting & Sons v. Jacks Bean Co.*, 236 Neb. 765, 463 N.W.2d 817 (1990). The last sentence in instruction No. 6 is a critical issue here, since it states the general rule without a clear explanation of that rule in accord with Ak-Sar-Ben's theory of modification. That part of the instruction was apparently taken from *W. Wright, Inc. v. Korshoj Corp., supra,* a suit by a subcontractor against the prime contractor for additional

expenses because of work suspension, which was not expressly provided for in their contract. The facts there are unlike those in the case at bar. The only evidence of a contract modification was that the subcontractor prepared a claim as directed by the prime contractor for forwarding to the owner. Accordingly, the "mere silence" was proper in *Wright*.

While there is no direct evidence of Atokad's formal acceptance of Ak-Sar-Ben's offer to commit 1 percent to the small-track fund conditioned on Atokad's canceling the 1984 contract's $50,000 payment, there was a fact question of Atokad's duty to respond and its acquiescence as shown by the close association of the parties; their previous dealings; Ak-Sar-Ben's benevolent assistance to Atokad; Atokad's 1986 need for $300,000 and continued insistence for Ak-Sar-Ben's 1-percent contribution to the small-track fund, which contribution was finally met; Atokad's legislative support of L.B. 1041 in its amended form and through final passage; and the other surrounding circumstances.

The use of the phrase "mere silence" in the last sentence of instruction No. 6, without explanation and guidance in its application, was confusing to the jury. Black's Law Dictionary 1382 (6th ed. 1990) defines silence as "[t]he state of a person who does not speak, or of one who refrains from speaking." A part of the instruction advised the jury that assent or acquiescence may be shown by acts or conduct and surrounding circumstances. The last sentence advises that mere silence (or failing to speak or respond) to an offer leaves the 1984 contract unmodified. A person trained in the law could understand the meaning of "mere silence" as used in instruction No. 6 without confusing it with other provisions in the same instruction relating to acts and conduct. To the contrary, a lay juror would be confused as to the meaning of the whole instruction because of the contradictions contained.

Instruction No. 6 was not reasonably clear. It was both contradictory and confusing to the jury, and it remained so after considering all of the instructions as a whole. Further, it was prejudicial to a substantial right of Ak-Sar-Ben's, requiring a new trial.

## PREJUDGMENT INTEREST

Prejudgment interest will not be awarded on an unliquidated claim. "A claim is unliquidated where a reasonable controversy exists either as to the right to recover or as to the amount of such recovery." *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 764, 428 N.W.2d 899, 905 (1988). A two-pronged inquiry is required. There must be no dispute either as to the amount due or as to the plaintiff's right to recover, or both.

In this case, although there was no dispute as to the amount due under the contract, the evidence demonstrated a reasonable controversy regarding the plaintiff's right to recover under the contract as related to the alleged modification. Accordingly, it was error for the trial court to award $10,932 prejudgment interest, and the same is set aside.

## PLAINTIFF'S CROSS-APPEAL

Atokad's claim that the trial court erred in failing to direct a verdict at the conclusion of the evidence against Ak-Sar-Ben's affirmative defense is without merit. A directed verdict is proper where the evidence is not conflicting and reasonable minds cannot differ as to the conclusion to be drawn from the evidence. *Gretna State Bank v. Cornbelt Livestock Co.*, 236 Neb. 715, 463 N.W.2d 795 (1990). The relative evidence in this case was conflicting on the modification issue, from which evidence differing conclusions could be drawn. Further, Atokad was not aggrieved by the judgment and therefore cannot appeal. See *Federal Dep. Ins. Corp. v. Swanson*, 231 Neb. 148, 435 N.W.2d 659 (1989).

REVERSED AND REMANDED FOR A NEW TRIAL.

HASTINGS, C.J., not participating.