GWENDOLYN S. REID

v.

RALPH LEE AYSCUE, ET AL.

Record No. 930071

November 5, 1993

Present: All the Justices

*John G. Crandley (Preston, Wilson & Crandley*, on briefs), for appellant.
*S. Bernard Goodwyn (Willcox & Savage*, on brief), for appellees.

JUSTICE LACY delivered the opinion of the Court.

The primary issue in this appeal is whether the trial court properly held that the doctrine of collateral estoppel precluded further

litigation between the parties on the issue of contributory negligence.

In 1985, Gwendolyn S. Reid was driving her car when she swerved to avoid hitting a pickup truck and collided with a barrier. Gwendolyn's mother, Gladys C. Reid, was a passenger in Gwendolyn's car and died as a result of injuries she sustained in the collision. Ronald D. Reid, Gwendolyn's brother and administrator of Gladys's estate, brought a wrongful death suit against the driver and owner of the pickup truck, Ralph Lee Ayscue and Allegheny Pepsi-Cola Bottling Company (Allegheny), respectively. Ronald alleged that Ayscue was negligent in the operation of the pickup truck and that this negligence resulted in Gladys's death. Ayscue and Allegheny filed grounds of defense alleging that the sole proximate cause of Gladys's death was Gwendolyn's negligent driving.

Ayscue and Allegheny also filed a third-party motion for judgment against Gwendolyn seeking contribution. That claim was severed from the wrongful death suit.

In the wrongful death suit, the jury found in favor of the estate and awarded damages of $76,633.29. The jury allocated the damages as follows: $26,633.29 for medical and funeral expenses; $50,000 to Ronald; and $0 to Gwendolyn. Judgment was entered on this verdict. That judgment was not appealed and is now final.

Ayscue and Allegheny paid the judgment and subsequently moved for summary judgment on their contribution claim. Ayscue and Allegheny argued that they were entitled to summary judgment because Gwendolyn was collaterally estopped from seeking to prove that she was not contributorily negligent since the jury determined this issue against her by apportioning her $0 in damages. The trial court agreed and, by order entered October 13, 1992, granted summary judgment against Gwendolyn for $38,316.65 plus interest, but denied Ayscue and Allegheny's request for prejudgment interest. We awarded Gwendolyn an appeal and also awarded Ayscue and Allegheny an appeal on their cross-error challenging the trial court's denial of prejudgment interest.

The doctrine of collateral estoppel, a species of the *res judicata* bar, precludes the relitigation of an issue of fact decided by a prior final judgment in a subsequent suit involving a different cause of action. *Bates v. Devers*, 214 Va. 667, 670-71, 202 S.E.2d 917, 920-21 (1974). To apply the doctrine, its proponent must show by a preponderance of the evidence: (1) identity of persons and parties; (2) identity of the issue; and (3) mutuality of the operation of the

estoppel. *Byrum v. Ames and Webb, Inc.*, 196 Va. 597, 600, 85 S.E.2d 364, 365 (1955).

In this case, the trial court found that the "real plaintiffs in the *Reid v. Ayscue* wrongful death action were the statutory beneficiaries, Ronald and Gwendolyn Reid," and that "had there been an award in favor of Gwendolyn Reid in the wrongful death suit, she could have used that judgment in her favor against Ayscue and Allegheny . . . as a defense against the third-party claim for contribution." Gwendolyn does not challenge these conclusions, but argues that the issue of her contributory negligence was not conclusively decided in the wrongful death case and, therefore, that collateral estoppel is not available here because there was no identity of issues. We disagree.

■ Identity of issues is satisfied if the proponent of collateral estoppel establishes that the issue was actually litigated and determined by a final judgment in a prior proceeding. *Bates*, 214 Va. at 671, 202 S.E.2d at 921.

■ A review of the record, including the pleadings and transcript from the wrongful death trial, shows that the issue of Gwendolyn's negligence was raised and vigorously litigated in that proceeding. Gwendolyn testified that she did not apply her brakes when Ayscue pulled in front of her car. She stated that she looked at her speedometer and when she looked back at the road, she saw that Ayscue had applied his brakes. At that point her vehicle veered to the left and collided with a barrier. This collision caused the injuries resulting in Gladys's death.

■ The jury was not required to make a separate, specific finding regarding whether Gwendolyn was negligent. However, the jury was required to consider the issue of Gwendolyn's negligence in awarding damages. Instruction 14 provided:

> The Court instructs the jury that Gwendolyn Reid is one of two lawful beneficiaries of the estate of Gladys Reid. You are further instructed, however, that if Gwendolyn Reid was guilty of any negligence which proximately caused or contributed to the accident in which Gladys Reid died, then any such negligence would bar a recovery by Gwendolyn Reid.
>
> Therefore if you find from the evidence and the instructions of the Court that Gwendolyn Reid was guilty of negligence which proximately caused or contributed to the accident, you should not award any damages to Gwendolyn Reid.

The uncontradicted evidence as to damages in the wrongful death trial showed that both beneficiaries had similar close and loving relationships with their mother and suffered equally from her death. In determining the damage award the jury was instructed as follows:

INSTRUCTION NO. 13

The Court Instructs the Jury:

If you find your verdict for the plaintiff, then in determining the damages to which he is entitled, you may consider, but are not limited to, any of the following which you believe by the greater weight of the evidence were caused by the negligence of defendant, Ralph Lee Ayscue, as damages suffered by the beneficiaries:
(1) any sorrow, mental anguish, and loss of solace suffered by the beneficiaries. Solace may include society, companionship, comfort, guidance, kindly offices, and advice of the decedent.
If you award damages, you may distribute these damages between Ronald D. Reid and Gwendolyn S. Reid, subject to the other instructions of this Court.
If you find your verdict for the plaintiff, you shall award damages for:
(1) any expenses for the care, treatment, and hospitalization of Gladys C. Reid incident to the injury resulting in her death; and
(2) reasonable funeral expenses.

■ The jury returned a verdict awarding $50,000 to Ronald but nothing to Gwendolyn. We must assume that the jury complied with the instructions given by the trial court and based its determinations on the evidence in accordance with those instructions. *Buckland v. Commonwealth*, 229 Va. 290, 296, 329 S.E.2d 803, 807 (1985); *Chesapeake & Ohio Ry. Co. v. Meadows*, 119 Va. 33, 44, 89 S.E. 244, 247 (1916). While Instruction 13 was permissive and did not require the jury to distribute damages to both beneficiaries, the uncontradicted evidence regarding the relationships between Gwendolyn, her mother, and her brother and the losses the children suffered as a result of their mother's death, simply does not support

allocating damages to Ronald, but not to Gwendolyn. Instruction 13, however, required that the allocation of damages be made "subject to the other instructions." The only rational interpretation of the jury's failure to award damages to Gwendolyn is that the jury believed she was negligent and, consequently, pursuant to Instruction 14, denied any damages to Gwendolyn.

■ Therefore, we find that the trial court did not err in determining that the issue whether Gwendolyn was negligent was litigated and resolved against her in the wrongful death action. Ayscue and Allegheny met their burden of establishing the requisites of collateral estoppel by a preponderance of the evidence and the trial court properly entered summary judgment in their favor.

■ We also find that the trial court did not abuse its discretion in refusing to award prejudgment interest under the circumstances of this case. While the amount of the contribution owed by Gwendolyn was ascertainable from the date of the verdict in the wrongful death litigation, a legitimate controversy existed as to whether Gwendolyn's negligence had been resolved in that litigation. Furthermore, as recognized by the trial court, the delay in resolving that issue was not attributable to the parties, but involved, among other things, the necessity of reassigning the case due to the death of the original trial judge. Accordingly, under these circumstances, we cannot say that the trial court abused its discretion in denying prejudgment interest. Code § 8.01-382. *Doyle & Russell, Inc. v. Welch Pile Driving Corp.*, 213 Va. 698, 703, 194 S.E.2d 719, 723 (1973).

Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*